**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:19-cv-00014-MR
[CRIMINAL CASE NO. 1:15-cr-00007-MR-WCM-1]**

| | |
|---|---|
| GORDIE LEROY PENSON, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) <br> _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] and Petitioner's Application to Proceed in District Court Without Prepaying Fees or Costs [Doc. 2].

**I.   BACKGROUND**

Petitioner was charged in the underlying criminal case with one count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count One); one count of knowingly and unlawfully discharging a firearm in furtherance of a crime of violence (Hobbs Act robbery), in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Two); and one count of being a felon in possession

of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count Three). [Criminal Case No. 1:15-cr-00007 ("CR"), Doc. 1: Indictment].

The Government presented evidence at trial that a man holding a .45 firearm with his face covered by a purple scarf, wearing Adidas sneakers and a red hooded jacket entered a Bojangles restaurant on the night of August 2, 2014. He confronted a customer and a front counter worker. He stepped up on the counter, jumped over, and then went to the back room with the restaurant manager. The robber discharged his firearm in the restaurant's office and left a short time later with the contents of the safe. Employees pressed the restaurant's silent alarm and called 911. Employees and the customer saw the robber run out of the Bojangles towards nearby dumpsters.

Police arrived within seconds of receiving the dispatch for the robbery in progress and searched the area immediately around the restaurant. They found Petitioner hiding in bushes near the dumpsters with two bags in the immediate area. A brown paper grocery bag contained clothing including a red hooded jacket, a purple scarf, and a pair of Adidas tennis shoes. A black Nike drawstring bag contained a large amount of U.S. currency, a .45 handgun, and a cell phone. A second cell phone was found on the ground. Both cell phones contained images of Petitioner and each contained information associated with him (voice mails, emails, text messages, etc.).

2

A surveillance video from inside the store was admitted into evidence and published to the jury. None of the witnesses inside the restaurant could positively identify Petitioner at trial because the robber's face was covered. However, a customer testified that Petitioner "definitely looked like the guy" who committed the robbery. [CR Doc. 60 at 49: Tr. Transcript]. Police testified that Petitioner's hands tested positive for gunshot residue and that the Adidas sneakers in the bag found in the bushes near him matched the soleprint on the Bojangle's counter. A gun casing from the Bojangle's manager's office was from a .45-caliber weapon.

Defense counsel presented a theory of misidentification and insufficient evidence due to shoddy police work. [CR Doc. 60 at 26-29: Tr. Transcript]. Counsel argued that the Government had presented only circumstantial evidence with no direct evidence positively identifying Petitioner as the robber. [CR Doc. 62 at 153-57: Tr. Transcript]. Counsel also repeatedly emphasized that there was no DNA evidence connecting Petitioner to the robbery. [Id. at 155, 159]. Specifically with respect to the purple scarf and hat found at the scene, counsel argued as follows:

> They want you to believe that my client used that, that he put it over his face or his mouth to conceal himself. Really? Don't you think that if he had breathed into it or if there was moisture there would have been DNA evidence? Don't you think they would have had that analyzed? And if so, if anything

3

> hinted or pointed towards Gordie Penson, don't you think you would have heard that in this case? The absence of that kind of evidence, I say to you, is striking.

[Id. at 164].

> Don't you think that the federal government, with its limitless resources and crime labs and technicians … could have analyzed that and found some trace, some latent bit of evidence, if indeed it belonged to Gordie Penson? But they didn't do that. They made a decision early in this investigation, long before the trial of this case, not to dig any deeper. What's wrong with this picture?

[Id. at 165].

The jury found Petitioner guilty on all counts. [CR Doc. 36: Verdict Sheet]. The Court sentenced Petitioner to a total of 161 months' imprisonment. [CR Doc. 46: Judgment].

Petitioner filed a timely appeal. Petitioner argued on direct appeal that: (1) the Court plainly erred by failing to require the Government to comply with the Court's discovery order and disclose exculpatory evidence in accordance with Brady v. Maryland, 373 U.S. 83 (1963); (2) the Government committed prosecutorial misconduct by making comments during closing argument about Petitioner's possible ownership of a cell phone found near the scene of the robbery that were improper and prejudiced him; and (3) the Government presented insufficient evidence to identify him as the robber so

4

the Court erred by submitting the case to the jury; and (4) trial counsel was ineffective for failing to object to the foregoing errors which resulted in plain error review on appeal. The Fourth Circuit found that no plain error occurred with regards to claims (1)-(3) and it declined to review claim (4) because no ineffective assistance of counsel was conclusively established by the record. United States v. Penson, 684 Fed. Appx. 297 (4th Cir. 2017). With respect to Plaintiff's claim of insufficient evidence, the Fourth Circuit found that the evidence presented at trial showed that:

> within minutes of the robbery, officers found Penson hiding in trees and bushes on the property of the restaurant that was robbed; eyewitnesses saw Penson leave the restaurant and run toward the trees and bushes; officers found a bag containing a .45-caliber pistol near Penson and ammunition inside the restaurant's office; Penson tested positive for gunshot residue on his hands at the time of his arrest; officers found near Penson a large amount of cash and clothing consistent with the eyewitnesses' descriptions of the robber's attire; and officers found cell phones with connections to Gordie Penson near the scene of the crime.

Penson, 684 Fed. Appx. at 299.

The Fourth Circuit thus concluded that, when the evidence is viewed in the light most favorable to the Government, "even if the absence of DNA or fingerprint evidence, the jury could reasonably conclude that Penson was the person who robbed the restaurant." Id. The United States Supreme

Court denied certiorari on January 8, 2018. Penson v. United States, 138 S.Ct. 710 (2018).

Petitioner filed the instant § 2255 Motion to Vacate on January 8, 2019. [Doc. 1]. He argues *verbatim*:

> (1) Mr. Penson received constitutionally ineffective assistance of counsel at pretrial and trial?
>
> Before trial, Mr. Penson instructed counsel to pursue a factual defense that used the forensic results of DNA test to show his innocence, to the courts. Counsel abandoned petitioner's only defense. During trial, counsel refused to present exculpatory evidence in the form of SBI laboratory results for items exhibit #40 which show inconclusive results of DNA comparisons. During closing counsel[ ] argued that forensic test[s] were not done.
>
> (2) Mr. Penson received constitutionally ineffective assistance on appeal?
>
> Counsel's argument on appeal prompted the Court of Appeals judges to make findings against the record. The court of appeals affirms conviction as they see eyewitness identification.

[Id. at 4-5].

Attached to the § 2255 petition are two letters from Attorney Jack W. Stewart to Petitioner. The first, dated August 19, 2015, states in pertinent part:

> By way of an update, I have also conferred with Assistant United States Attorney John Pritchard regarding the belated submission of any DNA

6

findings. At the present, it appears the SBI laboratory is conducting a rush analysis of the DNA sampling taken in your case. During our last conference, you expressed some confidence that any DNA finding would be exculpatory, although I doubt any conclusive findings would be helpful. In the event you do not understand the testing procedure that is in progress, the laboratory is attempting to detect any trace amounts of **your** DNA on articles of clothing found in the bag next to you at the time of your arrest. Since the presence of gunshot residue seemingly connects you to the robbery and the firearm found in one bag, I believe the presence of your DNA on articles of clothing found in the other bag would simply constitute 'icing on the cake' for the Government. That being said, I will [keep] you apprised of any developments as I learn the same.

[Doc. 1-1 at 1 (emphasis in original)].

The second letter from counsel to Petitioner is dated August 21, 2015, and states:

> Please be advised this letter is sent to follow up my … receipt of additional discovery from the Federal Government this date.
>
> To point, it appears the SBI laboratory has generated a cursory report on evidentiary items that were still under review. The DNA analysis appears to be inconclusive on the two items of clothing submitted for analysis, that being the ball cap and the knit muffler. The examination of the footprint impression left on the Bojangles countertop was more productive for law enforcement in that the shoe size and tread pattern appears consistent with your footwear. Aside from those developments, I do not believe the results yield anything further.

7

[Doc. 1-1 at 3].

## II. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the motion to vacate can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance

of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was

fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

To support an ineffective assistance claim based on the failure to investigate, a petitioner must present specific information to show what favorable evidence the investigation would have produced. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996). If there is "no reasonable probability that a possible defense would have succeeded at trial," counsel's failure to investigate such a defense is not prejudicial. See Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996). Decisions about what types of evidence to introduce "are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what sort of mitigating evidence they can choose not to introduce." Pruett v. Thompson, 996 F.2d 1560, 1571 n.9 (4th Cir. 1993).

Strickland also applies in the context of appellate representation. To show prejudice in such cases, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's

unreasonable failure to raise an issue. Smith v. Robbins, 528 U.S. 259, 285–86 (2000); see also United States v. Mannino, 212 F.3d 835, 845–46 (3d Cir. 2000) ("The test for prejudice under Strickland is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

To the extent Petitioner suggests that counsel failed to adequately investigate a DNA defense, this argument is conclusively refuted by the record. Petitioner filed letters he received from counsel documenting their discussions about pending tests, apprising Petitioner of the testing status and the potential impact of the testing, and the DNA testing's inconclusive results. [Doc. 1-1].

Further, Petitioner has not demonstrated that counsel was ineffective for choosing not to introduce the inconclusive DNA test results at trial. Although Petitioner believed that the DNA test results may be exculpatory, counsel explained that it was unlikely that the DNA testing would render any conclusive findings. [Doc. 1-1 at 1]. Counsel correctly informed Petitioner that "[t]he DNA analysis appears to be inconclusive on the two items of clothing submitted for analysis, that being the ball cap and the knit muffler." [Id. at 3].

Petitioner's contention that counsel abandoned any defense theory is refuted by the record. Counsel argued at trial that there was a reasonable doubt about Petitioner's identity due to sloppy police work, including failure to submit evidence including the cap and muffler for testing, and that the evidence connecting Petitioner to the robbery was purely circumstantial. Reasonable counsel could have concluded that arguing the absence of DNA testing was a stronger defense than introducing "inconclusive" DNA results which might have confused the jury or lent weight to Petitioner's identity as the robber. Counsel cannot be deemed deficient for choosing to focus on the absence of DNA testing rather than on inconclusive results which may have been damaging to the defense. See, e.g., Burger v. Kemp, 483 U.S. 776 (1987) (concluding that failure to introduce character evidence was effective performance because witnesses could have been subjected to harmful cross-examination or invited other damaging evidence). Petitioner's conclusory and speculative allegations have failed to demonstrate that any available test results would yield a reasonable probability of resulting in a different trial outcome. See generally United States v. Dyess, 730 F.3d 354, 364-65 (4th Cir. 2013) (rejecting § 2255 petitioner's ineffective assistance claim where he offered nothing more than speculative conclusions in explaining who counsel should have called and what aid their testimony

would have provided to his case). In addition, the DNA evidence needs to be understood in the context of the other evidence presented. When the Defendant was apprehended, very near by law enforcement found a drawstring bag that contained a .45 caliber gun like the one used in the robbery, a large amount of cash like that taken from the safe – and a cell phone that housed the Defendant's photos, voice mails, emails and text messages. The idea that inconclusive DNA evidence would likely have swayed the jury in the face of such identification evidence is extremely speculative.

For all the foregoing reasons, Petitioner's claim of ineffective assistance of trial counsel is denied.

Petitioner further contends that appellate counsel was ineffective for making an argument that "prompted the Court of Appeals judges to make findings against the record" and "affirm[ ] conviction as they see eyewitness identification." [Doc. 1 at 5].

Liberally construing the § 2255 petition, it appears that Petitioner is arguing that counsel's argument about insufficiency of the evidence was somehow defective. This claim is too vague and conclusory to support relief because Petitioner fails to identify the specific portion of counsel's argument that was allegedly deficient or explain how a different appellate argument would have probably resulted in reversal. See generally Dyess, 730 F.3d at

364-65 (rejecting § 2255 petitioner's ineffective assistance claim where he offered nothing more than speculative conclusions in explaining who counsel should have called and what aid their testimony would have provided to his case).

The gist of Petitioner's claim appears to be his disagreement with the Fourth Circuit's conclusion that eyewitness testimony supported his identification as the robber. See Penson, 684 Fed. Appx. at 299 ("eyewitnesses saw Penson leave the restaurant and run toward the trees and bushes; … [and] officers found near Penson a large amount of cash and clothing consistent with the eyewitnesses' descriptions of the robber's attire…."). The Fourth Circuit's conclusions are supported by the record and, in any event, Petitioner cannot "circumvent a proper ruling ... on direct appeal by re-raising the same challenge in a § 2255 motion." Dyess, 730 F.3d at 360 (quoting United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009)); see also United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (noting that, absent "any change in the law," defendants "cannot relitigate" previously decided issues in a § 2255 motion); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (holding that a criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal]").

Petitioner has failed to demonstrate a reasonable probability that he would have prevailed on appeal had counsel raised any different claims or arguments before the Fourth Circuit. Therefore, Petitioner's claim of ineffective assistance of appellate counsel is denied.

Finally, Petitioner has filed an Application to Proceed in District Court Without Prepaying Fees or Costs, [Doc. No. 2]. However, no filing fee is required for § 2255 proceedings because they are a continuation of the criminal action. United States v. Frady, 456 U.S. 152, 182 n.6 (1982); see Advisory Committee Notes to the Rules Governing § 2255 Proceedings in the United States District Courts, Rules 1, 3. Therefore, his motion will be denied as moot.

## III. CONCLUSION

For the foregoing reasons, the Court denies Petitioner's § 2255 Motion to Vacate and denies as moot Petitioner's Application to Proceed in District Court without Prepaying Fees or Costs.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. at 484-85. As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## O R D E R

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED**;

2. Petitioner's Application to Proceed in District Court without Prepaying Fees or Costs [Doc. 2] is **DENIED** as moot; and

3. Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: February 8, 2019

Martin Reidinger
United States District Judge